UNITED STATES of America, SMALL BUSINESS ADMINISTRATION, Plaintiff, Appellee,

v.

Rene F. SOTOMAYOR–SANTOS, Margarita Marquez–Goitia, Conjugal Partnership, Sotomayor–Marquez, Defendants, Appellants.

No. 95–1903.

United States Court of Appeals, First Circuit.

Submitted Aug. 2, 1996.

Decided Oct. 2, 1996.

Arturo Aponte Pares, Hato Rey, PR, on brief, for defendants, appellants.

---

Agnes I. Cordero, Assistant United States Attorney, and Guillermo Gil, United States Attorney, Hato Rey, PR, on brief, for plaintiff, appellee.

Before BOUDIN, Circuit Judge, and KEETON * and BARBADORO **, District Judges.

PER CURIAM.

In this appeal from a grant of summary judgment, the facts are easily summarized. On March 1, 1985, defendants Rene F. Sotomayor–Santos ("Sotomayor") and Margarita Marquez–Goitia ("Marquez") guaranteed a $150,000 loan made by Banco Popular de Puerto Rico to Juana Diaz Trading Corporation ("the Corporation"), the loan being secured by various assets of the Corporation including real property and chattels. Sotomayor was the vice-president of the Corporation. Because the Small Business Administration ("SBA") guaranteed the Banco Popular loan, defendants were required to execute the SBA's unconditional Form 148 guaranty.

The Corporation filed a voluntary Chapter 11 bankruptcy petition on January 17, 1989. On March 29, 1989, Banco Popular assigned its rights under the Corporation's note to SBA. Three years later, the Corporation's case was converted to Chapter 7, and the automatic stay against the real-property collateral was lifted in January 1994.

On May 26, 1994, SBA began proceedings in the federal district court in Puerto Rico to collect on the Corporation's notes by foreclosing on the real-property collateral and collecting from guarantors Sotomayor and Marquez. Sotomayor and Marquez replied that the SBA was estopped because it had demanded payment from them only after failing to realize upon the collateral that had originally oversecured the loan. Defendants pointed not only to the chattel mortgage but also to a factor's lien allegedly held by Banco Popular to further secure the loan.

The SBA moved for summary judgment, arguing that the waiver provision in the Form 148 guaranty signed by the defendants prevented the SBA's failure to pursue collateral from affecting the defendants' guarantee obligations. On May 31, 1995, the district court granted summary judgment for the SBA, holding that the Form 148 SBA waiver signed by defendants was valid and that the SBA was under no duty of commercial reasonableness.

The district court correctly held that the Form 148 waiver signed by defendants is valid. *United States v. Mallett,* 782 F.2d 302, 303 (1st Cir.1986). The waiver states, *inter alia,* that after debtor default the SBA may demand payment on the guarantee before pursuing any "rights or remedies against the Debtor or others ... [or] with respect to any part of the collateral." On its face, this language prevents the SBA's alleged failure to pursue its rights as a secured creditor in the debtors' collateral from reducing, postponing, or otherwise modifying the defendants' obligation to pay on the guaranty.

Defendants suggest that a commercial reasonableness requirement bound the SBA to protect the value of the collateral. This court has said that absent agreement to the contrary, a federal lender like SBA may be subject to a general obligation to behave reasonably in disposing of any collateral upon which it forecloses. *United States v. Baus,* 834 F.2d 1114, 1125–26 (1st Cir.1987); *Mallett, supra,* at 304. But here the defendants complain not of a faulty disposition of collateral but of the failure to pursue the collateral at all, precisely the failure waived in the Form 148 guaranty. Thus, the commercial reasonableness standard is inapplicable, as are cases like *United States v. Willis,* 593 F.2d 247, 251–58 (6th Cir.1979), relied on by defendants.

Defendants have also argued, both in the district court and on appeal, that the SBA's claim is barred because the SBA's lack of diligence in pursuing the collateral effectively deprived Sotomayor and Marquez of their right of subrogation in violation of 31 L.P.R.A. § 4956. This section states that "sureties, even when they are joint, shall be released from their obligation whenever by an act of the creditor they cannot be subro-

* Of the District of Massachusetts, sitting by designation.

** Of the District of New Hampshire, sitting by designation.

gated to the rights, mortgages, and privileges of the same." The district court did not directly address this argument, instead focusing solely on the applicability of the commercial reasonableness standard. On appeal, the government's main response is that section 4956 does not apply to a guarantor's "joint and several" obligation, but the provisions cited by the government, although murky, do not seem to us to bear out its position.

Whether section 4956 could restrict the SBA's rights is an interesting question. The guaranty signed by the defendants was a contract made between private parties (the defendants and the bank). But it was made on an SBA form, apparently as a condition of a loan guaranteed by the SBA in favor of the bank. There is considerable turmoil in the case law as to whether and when "federal common law" supplants state law in matters of this kind.[1] The SBA regulations, although not cited to us by the government, seek broadly to exclude any state law defense. *See* 13 C.F.R. § 101.106(d).

Even assuming that Puerto Rico law governed—a point we do not decide—section 4956 appears to us not to apply to the SBA's alleged inaction here. It is directed primarily against acts of the creditor that frustrate the guarantor's right to subrogate himself to the creditor's rights and thereby later recover whatever he has had to pay on the debtor's behalf. *Commonwealth v. Urb. Damino,* 112 P.R. Dec. 244, 248–49 (P.R.1982); *Industrial Equip. Corp. v. Builders Ins. Co.,* 108 P.R. Dec. 290, 300–01 (P.R.1979). Generally, the release of a surety requires creditor "activity, action, fact, the lack of diligence or passivity not being sufficient." *Olázabal v. United States Fidelity & Guaranty Co.,* 103 P.R. Dec. 448, 455–56 (P.R.1975) (quoting the Supreme Court of Spain).

But in this case the only conduct alleged by the defendants against the SBA is its failure diligently to pursue the collateral. The defendants have given us no reason to think that such inaction violates the terms of section 4956—which refers to "an act of the

creditor" and appears in the cases cited above to have been interpreted in this spirit. We add that the government denies any lack of diligence, but even if diligence were lacking, this is the very defense that the defendants waived in their original guaranty, and it is not clear that section 4956 would prevent an explicit contractual waiver if it did apply.

*Affirmed.* The request for double costs and attorney's fees is *denied.*

**1.** *Compare Boyle v. United Technologies Corp.,* 487 U.S. 500, 504–13, 108 S.Ct. 2510, 2514–19, 101 L.Ed.2d 442 (1988) (applying federal law) *and Baus,* 834 F.2d 1124–26 (same) *with United States v. Yazell,* 382 U.S. 341, 357–58, 86 S.Ct. 500, 509–10, 15 L.Ed.2d 404 (1966) (applying state law) *and United States v. H & S Realty Co.,* 837 F.2d 1, 1–2 (1st Cir.1987) (same). *See generally* Wright, *Law of Federal Courts* § 60, at 413–15 (5th ed. 1994).